STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff Below, Appellant,

v.

CLARENDON NATIONAL INSURANCE COMPANY, a foreign insurance company licensed to do business in this State, Defendant Below, Appellee.

Supreme Court of Delaware.

Submitted: Dec. 17, 1991.
Decided: Feb. 5, 1992.

Beth H. Christman and Christopher W. Poverman of Casarino, Christman & Shalk, Wilmington, for appellant.

Barbara J. Gadbois of Ament, Lynch & Carr, Wilmington, for appellee.

Before CHRISTIE, C.J., HORSEY, and HOLLAND, JJ.

HOLLAND, Justice:

This is an appeal from a declaratory judgment entered by the Superior Court in favor of the defendant-appellee, Clarendon National Insurance Company ("Clarendon"). The action involves an insurance coverage dispute with respect to the primary obligation to defend and indemnify an alleged tortfeasor. The plaintiff-appellant, State Farm Mutual Automobile Insurance Company ("State Farm"), instituted the de-

claratory judgment action seeking a determination that Clarendon, and not State Farm, was obligated to provide primary insurance coverage to State Farm's insured, Michelle Kelly ("Kelly"). Kelly was involved in an accident while driving an automobile that was insured under a policy issued by Clarendon. The automobile in question had been provided to Kelly free of charge by Graytak Chevrolet ("Graytak"), as a temporary substitute, while Graytak serviced Kelly's vehicle.

The declaratory judgment action was initiated by State Farm after a civil action was filed against Kelly as a result of the accident. *See Hurley v. Kelly*, C.A. No. 88C–DE–61 ("the Hurley action"). State Farm and Clarendon each denied that it was obligated to defend Kelly in the lawsuit or that it had a duty to pay any judgment assessed against Kelly as a result of the lawsuit. The Superior Court, after examining both insurance contracts, held that, as a result of an "escape clause" in the Clarendon policy, the insurance policy issued to Kelly by State Farm provided primary liability coverage for Kelly.

This Court has concluded that, pursuant to the mandate of the Delaware Motor Vehicle Financial Responsibility Law, the insurance policy of the vehicle provides primary coverage. 21 *Del.C.* ch. 29. Consequently, we hold that the "escape clause" contained in the Clarendon policy contravenes the public policy set forth in Delaware's Motor Vehicle Financial Responsibility Law and is void. Under the circumstances of this case, the Clarendon policy, insuring the vehicle, provides primary coverage to Kelly. Therefore, the judgment of the Superior Court is reversed.

#### Facts

The legal issues presented by State Farm's action for a declaratory judgment were presented to the Superior Court, in part, in the context of the following stipulated facts:

1. Graytak is an auto dealership doing business at 174 North DuPont Highway, New Castle, Delaware 19720.

2. NuCar Leasing is affiliated with Graytak and does business at 172 North DuPont Highway, New Castle, Delaware 19720.

3. Kelly brought her 1981 Chevrolet Chevette to Graytak for repair on or about December 16, 1986.

4. Graytak, through its affiliate, NuCar Leasing, provided Kelly with a 1987 Chevrolet Spectrum ("the Graytak vehicle") to be used as a temporary substitute while the repairs to her car were being made.

5. Pursuant to an agreement between Graytak and Kelly, the Graytak vehicle was provided free of charge.

6. Upon receiving the Graytak vehicle, Kelly signed a document entitled "Addendum to Rental Agreement—Temporary Substitute Automobile."

7. On January 3, 1987, while driving the Graytak vehicle, Kelly was involved in a collision on Interstate 95 with a vehicle driven by Teresa Hurley.

8. As a result of the accident, property damage to the Graytak vehicle was approximately $691.24.

9. As a result of the accident, Teresa Hurley and Jacqueline Hurley are alleged to have sustained injuries.

10. Teresa and Jacqueline Hurley have instituted suit against Kelly seeking damages for their injuries. The suit, filed in Superior Court in and for New Castle County, is styled *Hurley v. Kelly*, C.A. No. 88C–DE–61.

11. Kelly was an insured under a motor vehicle liability policy issued by the plaintiff, State Farm.

12. The State Farm policy contained a clause in the "liability coverage" section which provided:

OTHER INSURANCE

If there is any other applicable liability insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

13. Graytak was insured under a garage liability policy issued by the defendant, Clarendon.

14. The Clarendon policy provided liability coverage for covered automobiles defined as:

... an automobile owned or hired by or consigned to the named insured which is

a. held for sale; or

b. used in the automobile business of the insured; or

c. a customer rental auto; or

d. a company auto; or

e. held by the insured pending removal from the insured's premises after sale: All only covered while the covered autos are in the actual possession of the insured or the bailee of the insured.

15. The Graytak policy issued by defendant, Clarendon, also contained the following terms:

OTHER INSURANCE

(1) For any covered auto you own this policy provides primary insurance. For any covered auto you don't own, the insurance provided by this policy is excess over any other collectible insurance.

\* \* \* \* \* \*

(2) When two or more policies cover on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the limit of our policy bears to the total of the limits of all the policies covering on the same basis.

16. Within three months following the January 3, 1987 accident, the defendant, Clarendon, paid the property damage claim on the Graytak vehicle.

17. By letter dated May 6, 1988, Clarendon denied the claim for damages and bodily injury to Teresa and Jacqueline Hurley.

The insurance policy issued by Clarendon to Graytak also included an "escape clause," which excluded coverage to customers operating covered automobiles unless the customer had no other insurance or did not have sufficient insurance to meet the minimum required by law. That "escape clause" provided:

D. WHO IS AN INSURED.

1. For Covered Autos.

a. You are an insured for any covered auto.

b. Anyone else is an insured while using with your permission a covered auto *except:*

. . . . .

(3) Your customers, if business is shown in the General Declarations as an auto dealership. *However,* if a customer of yours:

(a) Has no other available insurance (whether primary, excess or contingent), he or she is insured but only up to the compulsory or financial responsibility law limits where the covered auto is principally garaged.

(b) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered auto is principally garaged he or she is an insured only for the amount by which the compulsory or financial responsibility law limits exceed the limits of his or her other insurance. (emphasis added).

State Farm's declaratory judgment requested the Superior Court to determine that the Clarendon policy provides primary liability coverage to Kelly.[1]

*Superior Court's Decision*

The Superior Court's decision was premised upon the validity of the "escape clause" in the insurance policy issued by Clarendon to Graytak's affiliate, NuCar Leasing. The "escape clause" stated that

1. The declaratory judgment action also requested the Superior Court to determine that Clarendon is obligated under the Clarendon insurance policy to appear and defend Kelly in litigation pending against her; that Clarendon is obligated under the Clarendon policy to pay on behalf of Kelly any amounts of money for which she is or may become liable in the litigation, pending against her up to the coverage limits contained in the Clarendon policy; and that Clarendon is obligated to pay all expenses incurred by State Farm for legal defense of Kelly from the date it was called upon to provide an attorney to appear and defend her in the Hurley litigation.

Graytak's customers were not insured under the Clarendon policy unless the customer had "no other available insurance (whether primary, excess or contingent)" or unless the customer had "other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits...." The Superior Court concluded that because Kelly had other insurance, i.e. the State Farm policy, she was not insured under the Clarendon policy unless her State Farm coverage was less than that required by the Motor Vehicle Financial Responsibility Law. *See* 21 *Del.C.* ch. 29. Since Kelly's State Farm insurance policy provided the minimum coverage required by Delaware law, the Superior Court ruled that State Farm's policy provided primary coverage to Kelly.

### The Parties' Contentions

State Farm has raised related issues in this direct appeal. State Farm contends that the Superior Court's decision is erroneous, as a matter of law, because it is in derogation of the statutory mandate of the Delaware Motor Vehicle Financial Responsibility Law. According to State Farm, that statutory scheme establishes that the insurance of the vehicle, rather than the driver, provides primary coverage. As a corollary, State Farm argues that the "escape clause" in the Clarendon insurance policy is contrary to the Delaware Motor Vehicle Financial Responsibility Law and should be declared void.

Clarendon acknowledges that 21 *Del.C.* § 2118 requires all *owners* of motor vehicles registered in Delaware to carry liability insurance coverage. However, Clarendon maintains that the general mandate of the Delaware Motor Vehicle Financial Responsibility Law is inapplicable to this case. Clarendon contends that, pursuant to 21 *Del.C.* § 6102, owners of rented vehicles, such as Graytak and its affiliate, NuCar Leasing, are specifically exempted from the Motor Vehicle Financial Responsibility Law so long as the owner carries or "causes to be carried" the required minimum coverage on the vehicle. 21 *Del.C.* § 6102(a). Clarendon argues that the "es-

cape clause" in its policy is consistent with the exemption of Section 6102 because it guaranteed the required minimum coverage on the Graytak vehicle if its driver, Kelly, did not carry such coverage of her own. Thus, Clarendon argues that the Superior Court properly ruled that primary coverage was provided by Kelly's State Farm insurance policy.

### Standard of Review

■■■■ The issues presented to the Superior Court required it to construe the Delaware Motor Vehicle Financial Responsibility Law and to interpret the clauses of the competing State Farm and Clarendon insurance policies. The same issues are presented to this Court. A trial court's construction of a statute is reviewed by this Court *de novo*. *Moses v. Board of Educ.*, Del. Supr., 602 A.2d 61 (1991). A trial court's interpretation of an insurance policy is also a determination of law. *Hudson v. State Farm Mut. Ins. Co.*, Del.Supr., 569 A.2d 1168, 1170 (1990). Consequently, the appropriate standard of appellate review requires this Court to determine whether the Superior Court "erred in formulating or applying legal precepts." *Id.*

### Delaware Motor Vehicle Financial Responsibility Law

■■■ Chapter 29 of title 21 of the Delaware Code is generally referred to as the Delaware Motor Vehicle Financial Responsibility Law. That law mandates a system of insurance intended to protect and compensate persons injured in automobile accidents. *State Farm Mut. Auto. Ins. Co. v. Wagamon*, Del.Supr., 541 A.2d 557, 560 (1988). That statutory mandate requires owners of motor vehicles to purchase, and insurance carriers to provide, both liability and no-fault compensation coverage. *Id.*

The provision requiring liability insurance coverage, 21 *Del.C.* § 2118(a)(1), states:

(a) No *owner* of a motor vehicle registered in this State, other than a self-insurer pursuant to § 2904 of this title, shall *operate or authorize any other*

*person to operate* such vehicle *unless* the owner has insurance on such motor vehicle providing the following *minimum insurance coverage:*

(1) Indemnity from legal liability for bodily injury, death or property damage arising out of ownership, maintenance or use of the vehicle to the limit, exclusive of interest and costs, of at least the limits prescribed by the *Financial Responsibility Law* [21 *Del.C.* ch. 29] of this State.

21 *Del.C.* § 2118(a)(1) (emphasis added). The express reference to the Financial Responsibility Law requires that section 2118(a)(1) be read in conjunction with the financial responsibility statute, 21 *Del.C.* ch. 29. *State Farm Mut. Auto. Ins. Co. v. Wagamon,* 541 A.2d at 560. The specific minimum liability limit is found in section 2902(b)(2):

(b) Such *owner's policy* of liability insurance *shall:*

.    .    .    .    .

(2) *Insure* the person named therein and *any other person, as insured, using any such motor vehicle* or motor vehicles *with the express or implied permission of such named insured,* against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such motor vehicle, as follows: $15,000, because of bodily injury to or death of 1 person in any 1 accident and, subject to said limit for 1 person $30,000, because of bodily injury to or death of 2 or more persons in any 1 accident, and $5000, because of injury to or destruction of property of others in any 1 accident.

21 *Del.C.* § 2902(b)(2) (emphasis added).

Thus, the Delaware statutory scheme provides that "[n]o *owner* of a motor vehicle registered in this State ... shall oper-

ate or authorize any other person to operate such vehicle unless the *owner* has insurance on such motor vehicle...." 21 *Del.C.* § 2118(a) (emphasis added). It also provides that "[s]uch *owner's* policy of liability insurance shall ... insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law...." 21 *Del.C.* § 2902(b)(2) (emphasis added). These statutes must be read in *pari materia.*

This Court has had several occasions to interpret and apply the two provisions, 21 *Del.C.* § 2118 and 21 *Del.C.* § 2902, which form the foundation of Delaware's system of automobile insurance. *See, e.g., Hudson v. State Farm Mut. Ins. Co.,* Del.Supr., 569 A.2d 1168 (1990); *Bass v. Horizon Assurance Co.,* Del.Supr., 562 A.2d 1194 (1989); *State Farm Mut. Auto. Ins. Co. v. Wagamon,* Del.Supr., 541 A.2d 557 (1988).[2] After careful consideration of 21 *Del.C.* § 2118(a)(1) and 21 *Del.C.* § 2902(b)(2), this Court has stated that:

The plain meaning of these two sections is clear and unambiguous: *motor vehicles registered in Delaware must be insured* against legal liability up to the stated limits *for the benefit of the named insured and any person operating the vehicle with the permission of the insured.*

*State Farm v. Wagamon,* 541 A.2d at 560 (emphasis added). Therefore, reading Section 2118 and 2902 in *pari materia* can only lead to the conclusion that the Delaware statutory mandate places the obligation of providing primary insurance coverage upon the policy of the vehicle's owner. *See State Farm Mut. Auto. Ins. Co. v. Wagamon,* 541 A.2d at 561.

### Clarendon's "Escape Clause"

■ In general, an insurance policy that contains an "escape clause" attempts to

---

**2.** In *State Farm Mut. Auto. Ins. Co. v. Wagamon,* this Court considered whether a provision in an insurance policy, which excluded liability coverage for intrafamily claims, violated Delaware's

Financial Responsibility Law. This Court held that the intrafamily exclusion contained in the insurance policy was void because it was contrary to public policy.

avoid liability when there is other valid and collectible insurance. *See generally,* 8A *J. Appleman, Insurance Law and Practice* § 4906 (1981). Section 2118(e) permits conditions and exclusions in insurance policies that are customary to the field of liability insurance. The relevant portion of 21 *Del.C.* § 2118(e) states:

> (e) The coverage described in paragraphs (1) through (4) of subsection (a) of this section may be subject to conditions and exclusions customary to the field of liability, casualty and property insurance *and not inconsistent with the requirements of this section....*

21 *Del.C.* § 2218(e) (emphasis added). Since the "escape clause" in the Clarendon insurance policy is *inconsistent* with the basic requirement of the Delaware Motor Vehicle Financial Responsibility Law, which mandates the vehicle's owner to provide primary minimum liability coverage, Clarendon's "escape clause" does not qualify as an exception under Section 2118(e). *Cf. State Farm Mut. Auto. Ins. Co. v. Wagamon,* 541 A.2d at 561.

■ However, Clarendon argues that, under the circumstances presented in the case *sub judice,* Graytak and its affiliate, NuCar Leasing, were exempt from the general mandate of the Financial Responsibility Law. Section 2901 of Title 21 states:

> This chapter shall not apply with respect to any motor vehicle owned by the United States, this State or any political subdivision of this State or any municipality therein or *with respect to any motor vehicle which is subject to the requirements of §§ 6102 and 6103 of this title.*

21 *Del.C.* § 2901 (emphasis added). Sections 6102 and 6103 of Title 21 set forth specific requirements applicable only to motor vehicle owners who engage in the business of renting vehicles without drivers. Section 6102 provides in relevant part:

> (a) *The owner of a motor vehicle who is engaged in the business of renting motor vehicles without drivers, who rents* any such vehicle without a driver to another, otherwise than as a part of a bona fide transaction involving the sale of such motor vehicle, and *permits the renter to operate* the vehicle upon the highways and who does not carry or cause to be carried public liability insurance ... shall be jointly and severally liable with the *renter* for any damages caused by the negligence of the latter in operating the vehicle and for any damages caused by the negligence of renting the vehicle from the owner.

> . . . . .

> (d) When any suit or action is brought against the owner under this section, the judge or court before whom the case is pending shall cause a preliminary hearing to be had in the absence of the jury for the purpose of determining whether the owner has provided, or caused to be provided, insurance *covering the renter* in the limits above mentioned. Whenever it appears that the *owner* has provided or caused to be provided insurance *covering the renter* in the sums above mentioned, the judge or court shall dismiss as to the owner, the action brought under this section.

21 *Del.C.* § 6102(a), (d) (emphasis added).

According to Clarendon, its "escape clause" met the criteria of 21 *Del.C.* § 6102, because Graytak through its affiliate, NuCar Leasing, was in the business of renting vehicles without drivers and the Clarendon policy provided public liability insurance if the driver of the Graytak vehicle was not otherwise covered. Thus, according to Clarendon the general mandates of the Delaware Motor Vehicle Financial Responsibility Law and any Delaware cases construing the public policy underlying that law are inapplicable to the present case.

It is unnecessary for this Court to decide whether the Clarendon "escape clause" is consistent with Section 6102. *See Hamon v. Richards,* Del.Super., 190 A.2d 612 (1963). The Graytak vehicle loaned to Kelly was not a "rented" vehicle as that term is used in Section 6102. The stipulated record reflects that Kelly paid no consideration for use of the Graytak vehicle. It was loaned to her "free of charge" as a temporary substitute while her own vehicle

was being serviced. Therefore, although Graytak, through its affiliate, NuCar Leasing, is in the business of renting vehicles, when Kelly was allowed to use the Graytak vehicle, as an act of accommodation, without receiving anything of value in return, Graytak was not "renting" that vehicle. *Horkey v. Cortz*, Del.Super., 173 A.2d 741, 742 (1961); *Western Casualty & Sur. Co. v. National Union Fire Ins. Co.*, 677 F.2d 789, 791 (10th Cir.1982). Consequently, Clarendon's reliance on Section 6102 is not supported by the stipulated record.

■ The public policy of this State, as reflected in the statutory mandate of the Delaware Motor Vehicle Financial Responsibility Law, places the primary financial responsibility to provide insurance coverage on the vehicle's owner. Under the circumstances presented in this record, the "escape clause" in the Clarendon insurance contract violates that public policy and is void. *Accord Stokes v. Reliance Ins. Co.*, Del.Super., 521 A.2d 638 (1986), *aff'd*, Del. Supr., 524 A.2d 679 (1987). When a contract provision is violative of public policy, this Court follows "the well-established rule of construction that if the offending provision is separable, it should be stricken, while the remaining contract provisions should be enforced." *State Farm Mut. Auto Ins. Co. v. Wagamon*, 541 A.2d at 561.

The "escape clause" in the Clarendon policy is entirely separable, and can be severed, without rendering the remaining provisions unenforceable. *Id.* Since the "escape clause" contained in the Clarendon insurance policy is violative of public policy, it will be stricken and the remaining provisions of the Clarendon insurance policy will be enforced. *See State Farm v. Wagamon*, 541 A.2d at 561. The insurance policy of the Graytak vehicle's owner, the Clarendon policy, is obligated to provide primary coverage to Kelly. State Farm must provide the excess coverage for any amounts, up to the limits of its policy, not covered by Clarendon.[3]

*Conclusion*

The judgment of the Superior Court is REVERSED. This matter is remanded for further proceedings consistent with this opinion.

---

**3.** The stipulated record reflects that the State Farm policy contained an excess clause which provided "any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance."